CHANCERY.            **Thornton, &c. vs Knox's Ex'r.**

*Case* 18.                    ERROR TO THE BOURBON CIRCUIT.

*Vendor and Vendee. Lien. Purchaser. Notice. Parties.*

*Sept.* 29.          JUDGE BRECK delivered the opinion of the Court.

The case stated.

ISABELLA KNOX sold and conveyed to Henry Towles, an undivided eighth part of one hundred acres of land in the county of Bourbon. The deed, which was duly executed and recorded on the 20th April, 1839, recites that it was made "in consideration of the sum of nine hundred, thirty seven and a half dollars, to me in hand paid, or secured to be paid, the receipt whereof is hereby acknowledged."

In March, 1842, Towles mortgaged the land thus acquired, with other lands and property, to Thornton, &c., plaintiffs in error, to secure the payment of a large amount of money.

In May, 1842, James Rogers, the executor of Isabella Knox, exhibited his bill in Chancery against Towles and the mortgagees, asserting a lien upon the land embraced in the deed from his testatrix to Towles, for an unpaid balance of the purchase money, and in support of his claim, relied upon the deed, and also upon the following note:

"On or before the 1st day of October, 1841, I promise to pay Isabella Knox, or order, five hundred and sixty two dollars and fifty cents, the last payment for land this day deeded to me. Witness my hand this 20th April, 1839.                    *Henry Towles.*"

Decree of the Circuit Court.

All the mortgagees except one, resisted the claim, but the Court was of opinion that the complainant was entitled to the relief sought, and decreed a sale of the land, for the payment of the note.

To reverse that decree, the mortgagees, who opposed the claim, have brought the case to this Court.

The first and most important question presented for our determination, is whether the Court was right in sus-

taining and enforcing a lien upon the land for the unsatisfied portion of the consideration. This question turns mainly upon the construction and effect of the recital in the deed in regard to the purchase money.

It may be assumed as the well settled doctrine, that upon a sale of real estate, the vendor has an equitable lien upon the estate for the purchase money, unless waived or released by him; and that a lien thus attaching, will continue and be equally availing against third persons, or subsequent purchasers, with notice that the purchase money remains unpaid, as against the vendee.

The note from Towles to Mrs. Knox, purports to be for *the last payment for the land that day deeded to him by her.* It bears the same date with the deed, was made an exhibit by the complainant, and read without objection upon the trial. The note, therefore, taken in connection with the deed, furnishes satisfactory evidence that the consideration, to the amount thereby secured, was at the execution of the deed and still is unpaid.

The recital in the deed, we think, very clearly implies that the purchase money, or a portion of it, was at the time unpaid. The deed was duly recorded, and the first link in Towles' chain of title. It was, therefore, constructive notice to the mortgagees, that the purchase money, or a portion thereof, remained unpaid at its execution, see *Johnson* vs *Gwathmey*, (4 *Littell*, 317,) and authorities there cited. Having notice of this fact, it devolves upon them to show that the lien of the vendor for any unpaid residuum has been removed, waived or abandoned.

What shall be construed a waiver or abandonment of the vendor's lien, is a question upon which there has been some conflict in judicial decisions. The subject was very fully investigated, and all the authorities examined in *Mackreth* vs *Simmons*, (15 *Vesey*. 328,) by Lord Eldon.; and also in *Fish* vs *Howland*, (1 *Paige*, 20,) by Chancellor Walworth, of New York. But although there has been no uniform rule upon the subject, yet all the authorities concur that the execution of a note or bond, or acceptance of a bill of exchange by the vendee for the purchase money, does not *per se* amount to a payment, or to

*Margin notes:*

THORNTON, &c. *vs* KNOX'S RX'R.

The general rule is, that a vendor has a lien for the purchase money, unless it is waived, as well against the vendee as subsequent purchasers with notice.

A purchaser is bound to notice recitals in deeds constituting the claim of title, through which he claims, and a recital that the deed is made upon a consideration *paid and secured* to be paid, is notice that it is unpaid, and the lien of vendor respected.

The execution of a note, bond or the acceptance of a bill of exchange by vendor, for the consideration of land sold, is not *per se* a waiver or abandonment of his lien.

a waiver or abandonment of the lien by the vendor. Such has been the uniform decision of this Court. There is no evidence or extraneous fact in this case, tending to prove that the vendor has waived or abandoned her lien, aside from the recital in her deed, that the consideration had been *paid or secured to be paid*, and that we deem insufficient.

In *Johnson* vs *Gwathmey, supra,* the recital is more specific in stating the instalments of the purchase money, but it does not vary in the material point, substantially from the recital in this case. In that case, it is recited in the deed, that the consideration *"was secured* to be paid by him, the said Gwathmey," and after setting out the several instalments, there is this further recital, "the receipt of which security is hereby acknowledged." In that case, the Court enforced the lien, against a subsequent purchaser, upon the ground that the recital was sufficient to put him upon enquiry whether the lien was or not removed.

In *Broadwell* vs *King*, (3 *B. Monroe,* 449,) the recital was almost identical with the recital in this case—*paid and secured to be paid*—and the Court say 'the words are of ambiguous import, susceptible of the construction that the unpaid portion of the consideration had beed secured by the note of the vendee, or by collateral' security, and that a subsequent purchaser might honestly fall into the latter interpretation. But it was not necessary, and the Court did not decide in that case, whether the recital should be construed as a waiver or discharge of the lien. The Court, upon further consideration, is now satisfied, as decided at the present term, in *Honore's ex'r.* vs *Bakewell, et al.,* that it should not be so regarded. The expression in this case, *paid or secured to be paid,* we are of opinion, was sufficient to put the mortgagees upon enquiry, and to entitle them to proof that the purchase money had been paid, or that the lien had been otherwise discharged or removed.

The fact relied upon that the vendor had removed from the State, and that her removal rendered it impracticable to enquire and ascertain from her whether her lien still existed, cannot, we think, vary the case; a subsequent

purchaser should require the vendee (his vendor,) to furnish proof of an unincumbered title, or purchase at his peril. We come to the conclusion, therefore, that as the record now stand the complainant was entitled to the lien as decreed by the Court below.

But it is insisted that the proper parties were not before the Court, and that upon that ground, the decree should be reversed.

It appears that Thomas Elliott, a mortgagee, was served with process, but afterwards and before the decree, *nisi*, departed this life. Before the final decree was rendered, the complainant filed a bill of revivor, making the executor of Elliott a defendant, who answered and in effect admitted the claim and lien asserted by the complainant. But it is contended that the heirs of Elliott were necessary parties. His will is not in the record nor does it appear what rights or powers were vested by it in the executor. He had undoubtedly the power to release the mortgage, and in that event, the legal title, so far as it had vested in the testator, and upon his death descended to his heirs, would revert to the mortgagor or enure to the benefit of the other mortgagees. But this the executor has not done; he admits the lien, but holds on to the mortgage subject to it. So far as appears, therefore, the title, to the extent that it passed by the mortgage to the testator, is in his heirs, and they were, therefore, necessary parties. The purchaser under the decree could not be vested with a perfect title unless they were parties or united in a conveyance. This might and no doubt would, to some extent, affect the sale and prejudicially to the surviving mortgagees. They have a right, therefore, to require that Elliott's heirs should be made parties.

*The heirs of one of several mortgagees dying, during the pendency of a suit brought to enforce a lien against the mortgagor and mortgagees, for consideration due, are necessary parties.*

We would also here suggest, that it does not appear from the record before us, that Towles, the mortgagor and a necessary party, has answered the complainant's bill, or has been served with process.

The decree is, therefore, for want of proper parties, reversed and the cause remanded, that the complainant may, by appropriate amendatory pleadings and process, bring the proper parties before the Court, and upon

his failure to do so within a reasonable time, that his bill may be dismissed without prejudice.

*B. & A. Monroe* and *Smiths* for plaintiffs: *Harlan & Craddock* for defendant.

