## J. B. DEASON ET AL. *v.* BENTONVILLE TAYLOR.

1. VENDOR'S LIEN. *Note payable in Mississippi certificates of indebtedness.*
    A note for the purchase-money of land, payable in Mississippi certifi-
    cates of indebtedness, is secured by the vendor's equitable lien the
    same as if payable in money.

2. PURCHASER. *Recitals in deeds. Notice.*
    The purchaser of land is bound to take notice of all recitals in the
    deed through which his title is derived; and is bound not only by
    every thing stated in the several conveyances constituting his chain
    of title, but must investigate and explore fully every thing to which
    his attention is thereby directed.

3. SAME. *Sale on credit. Notice.*
    When a deed recites that the sale is made on a credit, a subsequent pur-
    chaser is bound to inquire whether the purchase-money has been paid.
    That the time for the payment of the purchase-money, as stated in
    the deed, has elapsed, does not authorize him to presume that it was
    paid.

APPEAL from the Chancery Court of Lincoln County.

Hon. THOMAS Y. BERRY, Chancellor.

On the sixteenth day of February, 1872, Bentonville Taylor
sold and conveyed to J. B. Deason certain lots of land by a
deed which recited that the consideration was "the sum of
$700, to be paid to the party of the first part (Taylor), on
or before the first day of July, 1872, by the party of the
second part" (Deason). Deason gave his note for the pur-
chase-money, dated Feb. 16, 1872, as follows: "On or before
the first day of July next I promise to pay Bentonville Tay-
lor, or bearer, the sum of $700, for town lots conveyed by
him to me this day. This sum is to be paid in Mississippi
State certificates of indebtedness at par." This deed of
conveyance from Taylor to Deason was duly recorded on
the nineteenth day of February, 1872. Subsequently Deason
conveyed the lots of land to M. W. Hoskins; and M. W.
Hoskins and her husband, G. W. Hoskins, conveyed to Ellen
McClendon. The conveyances from Deason to Hoskins, and
from Hoskins to McClendon, were made some time after
the note from Deason to Taylor had become due. At the

time of the conveyance to M. W. Hoskins, Deason assured G. W. Hoskins, who was acting as agent for his wife, that he had paid to Taylor all of the purchase-money due him on said lots.

Some partial payments were made on the note of Deason to Taylor, but a balance was still due on said note on the 8th of December, 1874, when Bentonville Taylor filed his bill in chancery against J. B. Deason, M. W. Hoskins and her husband, G. W. Hoskins, Ellen McClendon and her husband, A. D. McClendon, to subject the land to the payment of the balance of purchase-money. The defendants demurred to the bill, " because the complainant has no vendor's lien, it appearing on the face of the bill that the consideration for the sale of the lands was not money or United States currency ; and because the recital in the deed was not notice to the defendants, Hoskins and wife, and McClendon and wife, of the complainant's equity." The demurrer was overruled, and the defendants answered the bill. Upon final hearing, a decree was rendered in favor of the complainant for the balance due him, and for a sale of said lands, in default of payment by the defendants of the amount found due. From this decree the defendants appealed, and assigned for error the action of the court in overruling the demurrer, and rendering final decree for the complainant.

*Sessions & Cassedy*, for the appellant.

1. The demurrer to the bill should have been sustained. The promise is not to pay in money, but in certificates of indebtedness at par. It is simply an agreement between parties to give and accept the securities of the State, which is a collateral covenant to pay the holder. This case falls within the rule laid down in the case of *Patterson* v. *Edwards*, 29 Miss. 67. The debt sought to be enforced is not for the purchase-money of the land, but for certificates of indebtedness, out of which Taylor expected to realize the purchase-money.

2. We insist that the decree is manifestly wrong upon the merits. It is conceded that Hoskins and wife and McClendon and wife did not have actual notice of Taylor's equity, but they are sought to be charged with constructive notice from the recorded deed. But an examination of this disclosed that

the note was long since due, and hence the presumption is that it had been paid; and, in addition to this, Deason, who gave the note, told them it was paid. We insist that the recital in the deed is no notice to any purchaser, after the day fixed in the deed for payment of the purchase-money. *Hoggatt* v. *Wade*, 10 S. & M. 143. The defendants Hoskins and McClendon were justified in acting upon the statement of Deason, that the entire purchase-money had been paid; and this principle has been settled by this court in the case of *Curtis* v. *Blair*, 26 Miss. 309.

*Chrisman & Thompson*, for the appellee.

1. The controlling question in this case is the effect of the recital in the deed from Taylor to Deason, which shows that the sale of the land was on credit. Subsequent purchasers from Deason deny actual knowledge. Are they charged with constructive notice? See *Martin* v. *Nash*, 31 Miss. 324; *Le Neve* v. *Le Neve*, 2 White & Tudor's Lead. Eq. Cas., pt. I., p. 120; *Learned* v. *Corley*, 43 Miss. 687.

2. It is said subsequent vendees purchased after the maturity of the debt, and that the presumption of payment protects them. But there is no presumption which excuses or relieves a purchaser from the necessity of inquiry when he is warned of an outstanding equity by a fact disclosed in his chain of title. That the subsequent purchasers were put upon inquiry *in fact* is shown by the answer which sets up the declarations of Deason that Taylor was paid. The defendants, at their own risk, relied on Deason's statements, which cannot bind Taylor. Good faith required of the subsequent purchasers an inquiry of Taylor, the vendor and creditor.

3. The current of modern decisions is to protect and enforce the right of the vendor where it can be fairly done without circumventing an innocent purchaser, and not to fritter it away by subtle criticism or ingenious contrivance. In harmony with this current of authority, the recent cases of *McLain* v. *Thompson*, 52 Miss. 418, and *Rutland* v. *Brister*, *ante*, 683, are well considered and conspicuous examples.

*Bentonville Taylor*, *pro se*.

1. Counsel for the appellants take the position that the note is a promise to pay a debt due from Taylor, the payee, to the

State of Mississippi, and that it was a collateral undertaking, and no lien existed; and they refer to the case of *Patterson* v. *Edwards*, 29 Miss. 67. In answer, we say that Taylor owed the State nothing, and Deason did not agree to pay any debt owing from Taylor to the State of Mississippi, as in the case referred to by the appellants, wherein the vendee agreed to pay a debt due from his vendor to a third party. This case is precisely analogous to the case of *Harvey* v. *Kelly*, 41 Miss. 490, where it was agreed that a sum certain should be paid for the land, and should be paid by a certain time, in lumber at a certain price ; and the court held that, the promisor having failed to pay in lumber, as per agreement, equity would force him to pay the amount in cash, as the amount was ascertained on the face of the note.

2. If a purchaser has notice of a deed, he is bound by all its contents. 2 Sugden Vendors, 293 (Am. ed.), § 40. A purchaser is presumed to have knowledge of any fact contained in a deed through which he claims title. Whatever is sufficient to put a party upon inquiry is, in equity, good notice to bind him. 1 Story Eq. Jur. § 400, and cases there cited.

CHALMERS, J., delivered the opinion of the court.

We are content with the finding of the Chancellor on the facts. If any injustice was done in fixing the amount due, it was to the appellee, and not to the appellants. The fact that the note was dischargeable in Mississippi certificates of indebtedness (known as Alcorn money) did not deprive it of the protection of the vendor's equitable lien. *Harvey* v. *Kelly*, 41 Miss. 490.

In the face of the deed which Taylor executed to Deason was this recital : " The party of the first part (the vendor), for and in consideration of the sum of $700, to be paid on or before the first day of July, 1872, by the party of the second part " (the vendee), &c. For this sum of $700, Deason, the vendee, executed his note to Taylor, due 1st of July, 1872. The deed was recorded at once, and Deason took possession of the premises. Without having completed payment in full of the note, Deason sold the premises in 1874 to Hoskins, who subsequently sold to Mrs. McClendon. Both Hoskins and Mrs. McClendon

deny actual knowledge, at and before their purchases, that any thing remained due to Taylor.

Did the law give them constructive notice of Taylor's rights? Nothing is better settled than that the purchaser of real estate is bound to take notice of all recitals in the chain of title through which his own title is derived. Not only is he bound by every thing stated in the several conveyances constituting that chain, but he is bound fully to investigate and explore every thing to which his attention is thereby directed. Where, therefore, he is informed by any of the preceding conveyances, upon which his own deed rests, that the land has been sold on a credit, he is bound to inform himself as to whether the purchase-money has been paid since the execution of the deed. *Wiseman* v. *Hutchinson*, 20 Ind. 40; *Croskey* v. *Chapman*, 26 Ind. 333; *Johnston* v. *Gwathmey*, 4 Litt. (Ky.) 317.

It is argued, however, that this principle only applies before the maturity of the notes, as shown by the recitals of the deed, and that it will not apply where, as in the case at bar, subsequent purchasers have bought after the notes were past due. It is said that, in such case, the subsequent purchasers may rely upon a presumption that the original debt has been paid. We know of no principle which would justify a reliance upon such a presumption, and it is expressly negatived by the cases of *Honore* v. *Bakewell*, 6 B. Mon. 67, and *Thornton* v. *Knox*, 6 B. Mon. 74. They may rely upon such presumption after sufficient time has elapsed to bar the notes, although, in fact, they may have been renewed. *Avent* v. *McCorkle*, 45 Miss. 221.

It appears in the case at bar that the subsequent purchasers knew that Deason had bought the realty on a credit, because they asked him at the time of their purchase if he had paid all the money due Taylor. It was their own folly if they relied upon his assurances, instead of applying for information to Taylor, who lived in an adjoining county, and is shown by the bill to be a practising lawyer, well known in Brookhaven, where the lots were situated and all the defendants resided.

*Decree affirmed.*